UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SERGIO MANUEL QUITUIZACA
QUITUISACA,

        Petitioner,

   v.

PAM BONDI, in her official capacity as
Attorney General of the United States, et al.

        Respondents.
_____

**DECISION AND ORDER**

6:25-CV-6527-EAW

      Petitioner Sergio Manuel Quituizaca Quituisaca ("Quituizaca"), who is married to a U.S. citizen and has a three-year-old child (also a U.S. citizen), has lived in this country for almost 10 years and he is in the process of formally seeking legal status. But almost four months ago, he was taken into custody by Immigration and Customs Enforcement ("ICE") and he has been detained at the Buffalo Federal Detention Facility in Batavia, New York, even though an immigration judge ("IJ") concluded he should be released upon payment of a $4,000 bond. This is all because of a "policy change" under the current executive administration where a law previously used to detain noncitizens stopped at the border is now being interpreted as allowing the detention without bond of individuals who reside in this country—in some cases, like Quituizaca, for years. Because the law does not allow for what Respondents claim it does, the petition is granted to the extent that Quituizaca is ordered released pursuant to the bond set by the IJ.

- 1 -

**FACTUAL & PROCEDURAL BACKGROUND**

Quituizaca is a 27-year-old native of Ecuador who has lived in the United States since approximately November 2016. (Dkt. 1 at ¶ 2). He is married to a U.S. citizen, with whom he has a three-year-old child, and he is the beneficiary of a pending I-130 Petitioner for Alien Relative. (*Id*.; Dkt. 1-1; Dkt. 1-2; Dkt. 1-3). He was arrested while at work and taken into custody by ICE officers on July 29, 2025, and placed into removal proceedings pursuant to 8 U.S.C. § 1229a. (Dkt. 1 at ¶ 3; Dkt. 1-4; *see* Dkt. 12-1 at 2). On August 13, 2025, an IJ ordered Quituizaca's release upon payment of a $4,000 bond. (Dkt. 1 at ¶ 4; Dkt. 1-5). The same day, the Department of Homeland Security filed form EOIR-43, Notice of Intent to Appeal Custody Redetermination, which Respondents contend triggered an automatic stay of the IJ's release order. (Dkt. 1 at ¶¶ 4, 5). Quituizaca filed the instant habeas petition on September 30, 2025. (Dkt. 1).

In response, Respondents moved to dismiss, arguing that because Quituizaca entered the country without inspection or admission, he remains an applicant for admission pursuant to 8 U.S.C. § 1225(b), which mandates that he be detained in immigration custody. (Dkt. 12). Quituizaca contends that his detention arises pursuant to 8 U.S.C. § 1226(a), which provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that after such arrest, the Attorney General may detain the individual or release them on a bond with conditions or on conditional parole. *See* 8 U.S.C. § 1226(a)(1)-(2).

Oral argument was heard before the undersigned on November 12, 2025, at which time the Court ruled from the bench that Respondents' motion to dismiss was denied and the petition was granted to the extent it seeks an order requiring that the terms of the IJ's release order be enforced. The Court ordered Quituizaca released from custody once the bond was satisfied consistent with the terms of the IJ's release order. On November 14, 2025, Respondents' counsel confirmed that Quituizaca had paid the bond and was released from custody. (Dkt. 17). Although the Court issued an Order the same day as oral argument memorializing the terms of its ruling, as stated therein a more detailed decision explaining the Court's reasoning would be issued in due course. (Dkt. 15). This is that decision.[1]

---

[1] Along with arguing that Petitioner must be detained under § 1225(b), Respondents also argue that the petition should be dismissed for failure to exhaust. (Dkt. 12-1 at 6-7). "There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus; however, such exhaustion is generally required as a prudential matter." *Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1-2 (S.D.N.Y. Jan. 23, 2017) (collecting cases). "Exhaustion of administrative remedies may not be required when: (1) available remedies provide no 'genuine opportunity for adequate relief'; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be 'futile'; and (4) in certain instances a plaintiff has raised a 'substantial constitutional question.'" *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992) (quoting *Von Hoffburg v. Alexander*, 615 F.2d 633, 638 (5th Cir.1980)); *see Compunnel Software Grp., Inc. v. Gupta*, No. 14 Civ. 4790(SAS), 2015 WL 1224298, at *4 (S.D.N.Y. Mar. 17, 2015) ("The exhaustion doctrine, however, is also subject to numerous exceptions."). At the very least, exhaustion would be futile under these circumstances.

## RELEVANT STATUTORY PROVISIONS

### Section 1225

Title 8 of section 1225 of the United States Code, is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Section 1225(a)(1) entitled "Aliens treated as applicants for admission" states as follows:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter *an applicant for admission*.

8 U.S.C. § 1225(a)(1) (emphasis added). Section 1225(b)(1) entitled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" applies to noncitizens initially determined to be inadmissible based on fraud, misrepresentation, or lack of valid documentation, as well as certain other noncitizens designated in the discretion of the Attorney General. Section 1225(b)(2) entitled "Inspection of other aliens" is a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), and states as follows in subparagraph (A):

> Subject to subparagraphs (B) and (C), in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).

Section 1226

Title 8 of section 1226 of the United States Code is entitled "Apprehension and detention of aliens." Section 1226(a) "sets out the default rule," *Jennings*, 583 U.S. at 288, and states as follows:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
>    (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>    (B) conditional parole; but
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)" and addresses "several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289.

## HISTORICAL BACKGROUND

For decades, immigration law was interpreted as separately addressing those who were stopped at the border seeking entry into the country, and noncitizens who already resided in this country. The Supreme Court addressed the different provisions in *Jennings v. Rodriguez* explaining that a noncitizen seeking entry into this country generally falls into "one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." 583 U.S. at 287. But for those already inside the United States, § 1226 "generally governs

- 5 -

the process of arresting and detaining that group of aliens pending their removal." *Id.* at 288. "In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under § 1226(a) and (c)." *Id.* at 289 (emphasis added).

"Under the administrations of five presidents—including this one in 2016-2020—section 1225 applied to noncitizens at or near the border or those who were still seeking admission under the legal fiction of parole; section 1226, on the other hand, applied to those noncitizens found in the United States without legal status, and therefore subject to removal." *Alvarez Ortiz v. Freden*, 25-CV-960-LJV, ___ F. Supp. 3d ___, 2025 WL 3085032, at *10 (W.D.N.Y. Nov. 4, 2025). But no longer. As explained during oral argument, because of a policy directive issued by the current executive administration shortly before Quituizaca was detained, ICE took the position before IJs that bond could not be set under § 1226(a) for noncitizens who were already residing in the country, and instead those individuals were governed by § 1225(b)(2). *See Antonio Aguirre Villa v. Warden Tony Normand, et al.*, No. 5:25-CV-89, 2025 WL 3095969, at *5 (S.D. Ga. Nov. 4, 2025) ("[O]n July 8, 2025, [the Department of Homeland Security ("DHS")] issued an internal memorandum to all ICE employees stating that DHS was changing its approach to how it treated foreign nationals 'alleged to be present in the country without admission and who would have previously been detained by DHS under 8 U.S.C. § 1226 and offered a bond hearing unless subject to criminal detention[.]' The memo stated that DHS would now categorize any such foreign national as 'an "applicant for admission" and therefore

subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A),' regardless of whether the foreign national was detained at a port of entry.").

This new policy directive ultimately led to a decision from the Board of Immigration Appeals on September 5, 2025, in *Matter of Jonathan Javier Yajure Hurtado*, 29 L. & N. Dec. 216 (BIA), 2025 WL 2674169 (Sept. 5, 2025), which held that IJs lack authority to hear bond requests of noncitizens present in the United States without inspection and admission because those individuals were classified under § 1225(b)(2) and thus subject to mandatory detention.

## **ANALYSIS**

Within the past couple months federal courts—including in this District—have been flooded with habeas corpus petitions under 28 U.S.C. § 2241 challenging detention without bond under this new interpretation of § 1225(b)(2). Almost all of the district judges to have addressed the issue have rejected the *Hurtado* decision. *See*, *e.g.*, *Villegas v. Francis*, No. 1:25-CV-09199 (JLR), 2025 WL 3215597, at *4 (S.D.N.Y. Nov. 18, 2025) (collecting cases and noting only three out-of-circuit decisions in favor of the government's position); *see also Alvarez Ortiz*, 2025 WL 3085032, at *1 (collecting cases); *Hyppolite v. Noem et al.*, 25-CV-4304 (NRM), 2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025) (same). And for good reasons.

First, the statutory language itself suggests that § 1225(b)(2) applies to individuals stopped at the border—not those like Quituizaca who were already residing in this country. "Section 1225(b)(2)(A) authorizes detention when an immigration officer determines that an individual is (1) an applicant for admission, (2) seeking admission, and (3) 'not clearly

and beyond a doubt entitled to be admitted.'" *Romero Perez v. Francis et al.*, No. 25-CV-8112 (JGK), 2025 WL 3110459, at *2 (S.D.N.Y. Nov. 6, 2025). Unlike "an alien who is an applicant for admission," an alien who is "seeking admission" is not defined under the statute. But as other courts have concluded, "seeking admission means actively trying to acquire lawful entry after inspection and authorization by an immigration officer." *Alvarez Ortiz*, 2025 WL 3085032, at *6 (citations and quotations omitted). Some courts have concluded that the plain meaning of this term means that the alien is trying "to *go into* the country," *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025); *see also Guzman Andujar*, 2025 WL 3215597, at *3 ("All combined, 'seeking admission' means presently trying to enter the United States at or near the border."), while at least one other court has concluded that "'lawful entry' could mean either the legal right to enter . . . or the act of entering the country legally" and thus the term is ambiguous, *Alvarez Ortiz*, 2025 WL 3085032, at *7. But even if ambiguous, other principles as discussed below require rejection of Respondents' position.

Second, construing § 1225(b)(2) in the manner urged by Respondents and adopted in *Hurtado*, would violate fundamental canons of statutory construction. Respondents contend that "an alien seeking admission" is the same as "an applicant for admission." (Dkt. 12-1 at 8). But to accept that position would "mean that Congress used two different phrases to mean the same thing in the same provision." *Jhon Kevin Sarmiento Guerrero v. Noem et al.*, No. 25-CV-5881 (EK), 2025 WL 3214787, at *3 (E.D.N.Y. Nov. 18, 2025). This is contrary to basic rules of statutory construction. *Id.* (citing *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning

and different terms usually have different meanings.")). And "if all 'applicant[s] for admission] also are 'seeking admission,' then the words 'seeking admission' would be surplusage," in violation of the principle that a statute should be construed so that no part be superfluous. *Alvarez Ortiz*, 2025 WL 3085032, at *7; *see Hyppolite*, 2025 WL 2829511, at *9 ("[I]f the mandatory detention provision in § 1225(b)(2) applied to *all* noncitizens who are 'applicants for admission,' then there would be no need for Congress to have separately referenced a sub-category of persons 'seeking admission' in the specific section that relates to mandatory detention.").

Third, "[i]n considering § 1225(b)(2)(A) within its statutory context, it was clearly intended to apply to noncitizens who are *presently* seeking to enter the United States, and not those . . . who have [already been living] in the country. . . ." *Hyppolite*, 2025 WL 2829511, at *9. That is because under subparagraph (B), subparagraph (A) does not apply to an alien who is a "crewman" or a "stowaway," 8 U.S.C. § 1225(b)(2)(B), and under subparagraph (C), if the alien described in subparagraph (A) is "arriving on land" from "a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory," *id*. § 1225(b)(2)(C). "The fact that these carve-outs involve various means of arriving in the United States suggests 'that the category of applicants for admission covered by [section] 1225(b)(2) who are "seeking admission" is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering—not those in [Petitioner's] circumstances." *Alvarez Ortiz*, 2025 WL 3085032, at *8 (citations omitted); *see also Guerrero*, 2025 WL 3214787, at *4 ("The 'context' and 'overall statutory scheme' support Petitioner's reading, as well.").

Fourth, if § 1225(b)(2) already allowed for mandatory detention of any noncitizen without lawful status—even those residing in this country for years—it would have served no purpose to enact the 2025 Laken Riley Act, which expanded the categories of individuals who could be detained under § 1226(c). *Alvarez Ortiz*, 2025 WL 3085032, at *8 ("In other words, by the respondents' own admission, the text added by the Laken Riley Act is completely co-extensive with their interpretation of section 1225(b)(2), and Laken Riley therefore was a meaningless addition to our nation's laws."). Numerous courts have concluded as much, *id*. (collecting cases), and Respondents have no reasonable explanation for why Congress passed and the President signed in January of this year, a law that under their reading of § 1225(b)(2) was completely unnecessary. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Hyppolite*, 2025 WL 2829511, at *10 (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)).

The above are just some of the reasons advanced by the many courts that have rejected the position taken by Respondents. But this Court finds them among the most persuasive—in addition to the fact that for decades the executive branch has taken the position that § 1225(b)(2) applies to noncitizens arriving at the border or those apprehended just after entering—not to those already residing in this country. In other words, the Court disagrees that an individual like Quituizaca who has been living in this country for almost 10 years, married to U.S. citizen with whom he has a child (also a U.S. Citizen), actively employed and in the process of formally seeking legal status—can be arrested and detained with no eligibility for bond under § 1225(b)(2).

## **CONCLUSION**

For the foregoing reasons, the petition is granted to the extent that Quituizaca is ordered released pursuant to the bond set by the IJ and Respondents' motion to dismiss (Dkt. 12) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
CHIEF JUDGE
UNITED STATES DISTRICT COURT

Dated:   November 24, 2025
         Rochester, New York